58 CCPA

**Application of Karl ZIEGLER, Heinz Breil, Erhard Holzkamp and Heinz Martin.**

**Patent Appeal No. 8405.**

United States Court of Customs and Patent Appeals.

June 17, 1971.

---

Burgess, Dinklage & Sprung, New York City, attorneys of record, for appellants. Arnold Sprung, New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–4, 6–10, 12–19, 23, 28–34, 44, 86–96, 99, 101, and 105–106 in appellant's application entitled "Polymerization of Ethylenically Unsaturated Hydrocarbons."[1] No claims have been allowed.

The invention relates to the polymerization of ethylenically unsaturated hydrocarbons with what have become known as "Ziegler catalysts." Claim 1 is considered representative:

1. Method for the polymerization of ethylenically unsaturated hydrocarbons which comprises contacting at least one ethylenically unsaturated hydrocarbon with a catalyst formed by mixing at least one aluminum tri-hydrocarbon the hydrocarbon radicals of which are members selected from the group consisting of alkyl and aryl radicals with a heavy metal compound selected from the group consisting of the salts and the freshly precipitated oxides and hydroxides of metals of Groups IV–B, V–B and VI–B of the Periodic System, including thorium and uranium, and recovering the high molecular polymer formed.

---

1. Serial No. 745,998 filed July 1, 1958 as a "continuation" of applications serial No. 469,059 filed November 15, 1954; serial No. 527,413 filed August 9, 1955; serial No. 554,631 filed December 22, 1955; and serial No. 514,068 filed June 8, 1955.

All but one of the appealed claims are process claims.[2]

The process claims have been rejected solely on the ground of double patenting (apparently of the "obviousness type") over the catalyst claims of appellants' patent No. 3,257,332.[3] No terminal disclaimer has been filed. Appellants contend that the double patenting rejection in this case is prohibited by 35 U.S.C. 121. This necessitates a discussion, which we will attempt to keep brief, of the proseuction history of the applications involved.

To say the least, the background and chronology of events that led up to the double patenting rejection are somewhat confusing. It all started in 1954 when application serial No. 469,059 ('059), which eventually matured into patent No. 3,257,332, was filed containing both catalyst and polymerization process claims. On June 13, 1956, the examiner required restriction between the catalyst and the process claims. In December of 1956 appellants elected the process claims without traverse. On September 16, 1957, the examiner apparently notified appellants that both the elected process and the non-elected catalyst claims were "deemed allowable but formal allowance is held in abeyance pending the determination of a possible interference";[4] However, the restriction requirement was not officially withdrawn.

Shortly thereafter appellants filed two further applications. One, serial No. 692,020 ('020), containing catalyst claims, was labeled a "division" of '059 and two other copending applications. The other application, serial No. 745,998 ('998), is the present one on appeal. It

contained process claims and was identified by appellants as a "continuation" of '059 and three other applications. On May 19, 1959, the examiner officially withdrew the restriction requirement in '059. Thereafter appellants added the catalyst claims from '020 to '998, which was followed by a restriction requirement in '998 between the catalyst and process, and appellants elected the process claims.

Prosecution in the several applications was delayed due to interference proceedings; however, in 1966 application '059 matured into patent No. 3,257,332. On March 9, 1966, before allowance of '059 but after appellants were notified that both the catalyst and process claims in '059 were allowable, appellants canceled the process claims in '059. Twice after appellants canceled the process claims, once before and once after the notice of allowance was mailed, the examiner warned appellants of the possibility of a double patenting rejection in '998 over the claims in '059 since the restriction requirement in '059 had been withdrawn. Appellants were in both instances given the opportunity to reinstate process claims in '059. On May 4, 1966, after appellants had paid the final fee in '059, the restriction requirement in '998 was withdrawn and the claims were rejected as unpatentable over the catalyst claims in '059 on the ground of double patenting. The examiner reasoned that the double patenting rejection did not contravene 35 U.S.C. 121 because (1) the present application "is not technically a divisional application of '059 and certainly * * * was not filed as a result of a restriction requirement"; (2) the Ziegler patent "is

2. Claim 89 recites a catlyst and appellants apparently had intended to cancel it. Since only the process claims have been mentioned by appellants in the brief, we will not consider catalyst claim 89 in this appeal. In re Lobdell, 167 F.2d 634, 35 CCPA 1091 (1948).

3. Issued June 21, 1966 on application serial No. 469,059 filed November 15, 1954.

4. We say "apparently" because the Office action of September 16, 1957 is not printed in the record. However, the solicitor in his brief quotes from the September 16th Office action and we have reproduced a part of that quotation here, assuming it to be accurate.

not considered to be a patent issuing on an application with respect to which a requirement for restriction has been made" since the restriction requirement was withdrawn and appellants were afforded an ample opportunity to reinstate the canceled process claims in '059; and (3) at the time '059 matured into a patent "there was no outstanding restriction requirement between the catalyst and process in either case."

Upon appeal, the Board of Appeals affirmed the rejection of all claims on the ground of double patenting. In regard to the question of the applicability of § 121, the board stated:

> Since this application is not directed to the *non-elected* subject matter of application '059, it was not filed as a result of the restriction requirement made in application '059. It, therefore, cannot come under the prohibition against double patenting of Section 121.
>
> Moreover, appellants were given proper notice by the Examiner in ample time to incorporate process claims in application '059 after the Examiner withdrew his restriction requirement May 19, 1959 therein. However, appellants deliberately and with full knowledge of all the facts canceled the claims to the *elected* process in '059 application.

■ Appellants ask us first to consider the propriety of the double patenting rejection, implying that the court may find the process claims on appeal to be patentably distinct from the patented catalyst claims and thus reverse on the ground that the double patenting rejection in any circumstances is unsound. However, appellants in their brief state that they "do not feel that they are properly in a position to argue that the process and catalyst claims involve separate, patentably distinct inventions." Since the propriety of the double patenting rejection, aside from the alleged § 121 prohibition of such a rejection, was not questioned below, we will not consider the merits of the issue here, but will take as true appellants' statement that there is no patentable distinction between the process and catalyst claims. In re Brown, 406 F.2d 780, 56 C.C.P.A. 1339 (1969).

Appellants, while thus not disputing the propriety of the obviousness-type double patenting rejection if there had not been a restriction requirement, do strenuously contend that the third sentence of 35 U.S.C. 121 prohibits such a rejection under the present circumstances. Appellants, in essence, ask us to look at the conditions set forth in § 121, which conditions they submit are literally met by the prosecution history of application '998 and its parent application '059.

Section 121 provides in part:

■ If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions. [2] If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application. [3] A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is filed before the issuance of the patent on the other application.

Comparing the conditions of § 121 with the facts in this case, we can see a number of possible issues. First, it can be questioned whether the prohibition in the third sentence of § 121 is applicable against double patenting rejections. Secondly, it may be asked if the "independent and distinct" requirement of the

first sentence of § 121 is also a prerequisite to the applicability of the third sentence prohibition. A third issue involves the term "divisional application" as it is used in § 121. Finally, it can be questioned whether after a restriction requirement and the filing of a divisional application the prohibition in the third sentence of § 121 irrevocably arises or whether the restriction requirement may be withdrawn, depriving appellant of any benefit of § 121.

We specifically decline to discuss or decide any of the above-mentioned issues except the fourth and last, which we find dispositive.

■ The third sentence of § 121 provides that the prohibition applies when there is a "patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement." Appellants contend that patent No. 3,257,332 was issued on application '059 in which a restriction requirement had been made, and, consequently, when the "divisional" application '998 was filed, the prohibition in the third sentence of § 121 irrevocably arose. The solicitor, on the other hand, contends that the Patent Office may re-examine applications, decide that the restriction requirement is not appropriate, withdraw it, and the prohibition in the third sentence of § 121 will not apply thereafter.

■ We agree with the solicitor. While there was a restriction requirement in '059, it was officially withdrawn before a patent issued on application '059 and appellants were given every opportunity to include both process and catalyst claims in that application. We see no good reason why the Patent Office may not, within the bounds of due process, re-examine an application and withdraw the restriction requirement if it is found to be erroneous or unwarranted. Clearly, such re-examination is not prohibited by § 121. In fact, re-ex-

amination in general is provided for in 35 U.S.C. 132, and Rule 142(b) of the Patent Office Rules of Practice applies the practice of re-examination to restriction requirements, stating that the non-elected claims are "subject * * * to reinstatement in the event the requirement for restriction is withdrawn or overruled."

Nor do we see any good reason, other than to extend the monopoly, for appellants' refusal to reinstate the process claims in application '059. Appellants acted to cause the patent on application '059 to issue some five years ago without the process claims. They knew at that time that the examiner's position was that the withdrawal of the restriction requirement had eliminated the applicability of the third sentence prohibition in § 121. Now appellants seek obviously to extend their protection beyond the expiration of the patent issued on '059. No terminal disclaimer has been offered.

Appellants contend that they were forced by the restriction requirement in '059 to file the '020 "divisional" and the '998 "continuation," and that they, therefore, acted to their monetary detriment in reliance on the restriction requirement. It is simply a fact of life that many actions taken in the Patent Office cost time and money whether they eventually avail one of a patent or not. The fact that appellants paid to file '020 and '998 is not a sufficient reason for saying that the withdrawal of a restriction requirement will not eliminate the applicability of the third sentence of § 121. The restriction requirement disappears; it is as though it had not been made. With the disappearance of the restriction requirement, the need for a divisional application and the need for the third sentence prohibition also disappear.

In addition, it appears to us that in this particular instance appellants went to the expense of filing '020 and '998 for their own convenience, and not because

they were forced to do so by the restriction requirement. We do not wish to speculate on all of appellants' reasons for filing '020 and '998 since, for whatever reason, appellants did so with the chance that the restriction requirement might be withdrawn. However, it seems to us that a primary reason for doing so was to consolidate '059 and the various other applications into '020 and '998.

Thus, whether or not the third sentence of § 121 applies to double patenting situations, we conclude that it cannot help appellants in this case since the restriction requirement was withdrawn and the withdrawal of the restriction requirement deprived appellants of any possible benefit from § 121. Therefore, we affirm the decision of the board.

Affirmed.