**GERBER GARMENT TECHNOLOGY, INC., Plaintiff–Appellant,**

v.

**LECTRA SYSTEMS, INC. and Lectra Systems, S.A.. Defendants–Appellees.**

No. 89–1743.

United States Court of Appeals, Federal Circuit.

Oct. 10, 1990.

Edward F. McKie, Jr., Banner, Birch, McKie & Beckett, Washington, D.C., argued for plaintiff-appellant. With him on the brief were William W. Beckett and Barry L. Grossman.

Larry Hugh Chesin, Meals, Kirwan, Goger, Winter & Parks, P.C., Atlanta, Ga., argued for defendants-appellees.

Before MARKEY, Circuit Judge,[*] BENNETT, Senior Circuit Judge, and SENTER, Chief Judge.[**]

MARKEY, Circuit Judge.

The United States District Court for the Northern District of Georgia, No. 1:86–CV–2054–CAM, denied the motion of Gerber Garment Technology, Inc. (Gerber) for summary judgment that United States Patent No. 3,790,154 ('154) was infringed and not invalid, denied Gerber's request for a preliminary injunction, and granted Lectra Systems, Inc. and Lectra Systems S.A.'s (Lectra's) motion for summary judgment that claims 15 and 16 of the '154 patent are invalid for obviousness-type double patenting in view of claim 23 of United States Patent No. 3,495,492 ('492). Gerber appeals from the denial of its motion for preliminary injunction. We affirm.

## BACKGROUND

### Proceedings in the Patent and Trademark Office

On May 5, 1969 Gerber filed an original patent application. The Patent and Trademark Office (PTO) examiner imposed a restriction requirement between "Claims 1–11 and 16–28 drawn to a cutting apparatus" and "Claims 12–15 drawn to a work holding means." *See* 35 U.S.C. § 121. Gerber elected to prosecute the former claims and the application issued as the (now expired) '492 patent on February 17, 1970.

On February 2, 1970 Gerber had filed a continuation-in-part application directed to the "work holding means" of claims 12–15. Gerber abandoned that application in favor of a continuation application filed on December 17, 1971. The latter application issued as the '154 patent on February 5, 1974. During the four years of prosecution preceding issuance of the '154 patent, Gerber amended and substituted claims for consideration by three examiners.

### The Patents

The patents-in-suit relate to automated fabric cutting and disclose the use of a vacuum to hold a stack of multiple layers of fabric on a penetrable support surface while a vertically reciprocating cutting blade cuts the fabric.

Claim 23 of the '492 patent reads:

> 23. An apparatus for working on sheet material comprising a bed of penetrable material defining a surface for supporting sheet material spread thereover, a piece of substantially air-impervious sheet material overlying at least an associated portion of the exposed surface of the material over said supporting surface, means for producing a vacuum adjacent said supporting surface which acts on said sheet of air-impervious material and pulls it toward said supporting surface so as to compress said sheet materi-

---

[*] Circuit Judge Markey vacated the position of Chief Judge on 27 June 1990.

[**] The Honorable L.T. Senter, Jr., Chief Judge for the United States District Court for the Northern District of Mississippi, sitting by designation.

al between it and said supporting surface, a cutter for cutting sheet material spread on said supporting surface, and means for moving said cutter and said supporting surface relative to one another along a given line of cut, said cutter having a cutting tool which during normal operation of said cutter to cut sheet material received on said supporting surface penetrates said bed of penetrable material.

Claims 15 and 16 of the '154 patent read:

15. In a machine having a tool in the form of a cutting blade adapted to normally pass through and beyond an object in a cutting operation, an apparatus for holding the object in a rigid condition while it is worked on by the cutting blade, said apparatus comprising support means defining a penetrable supporting plane on which said object is placed in a cutting operation for enabling the cutting blade passing through said object to also pass through and beyond the supporting plane, a panel of substantially air-impervious sheet material overlying at least a portion of the exposed surface of said object, and means for producing a vacuum directly adjacent the surface of said air-impervious panel facing said object so that atmospheric pressure acting on said panel pushes it toward said object and causes said object to be compressed between said panel and said supporting plane.

16. The apparatus defined in claim 15 further characterized by said support means comprising a bed having a supporting surface defining said supporting plane and which bed is made of such material as to be readily penetrable by said tool to thereby enable said tool to pass through and beyond the plane of said supporting surface.

### Proceedings in the District Court[1]

Gerber sued Lectra for infringement of three patents, the '154 patent and two others. Gerber moved for summary judgment

that the patents were infringed and not invalid, or, in the alternative, for preliminary injunction. Because Lectra's opposition raised issues of fact as to the two other patents, Gerber withdrew its motion as to them, leaving them for trial.

Lectra filed a motion for summary judgment that the asserted claims 15 and 16 of the '154 patent were invalid for obviousness-type double patenting. The district court determined that: (1) 35 U.S.C. § 121 did not preclude Lectra from raising the issue because the claims were not consonant with those not elected under the restriction requirement; and (2) claims 15 and 16 of the '154 patent were invalid for obviousness-type double patenting in view of claim 23 of the '492 patent.

The district court denied Gerber's motion for summary judgment and its request for a preliminary injunction. Respecting the latter, the district court merely stated in the last paragraph of its order that it should be denied. The district court entered no findings on the questions normally involved in a grant or denial of a preliminary injunction (likelihood of success, irreparable harm, balance of hardships, and public interest).

### ISSUE

Whether the district court abused its discretion in denying Gerber's motion for preliminary injunction.

### OPINION

#### Introduction

■ Compliance with a restriction requirement means the claims in a divisional application must be consonant with those not elected under that requirement. Noncompliance with the consonance requirement is normally detected by the PTO examiner. *See* Manual of Patent Examining Procedure (MPEP) § 804.01 (double patenting protection of Section 121 does not apply where the claims are not consonant with, *i.e.* "have been changed in material re-

---

1. The district court adopted the recommendations of a special master as an "order of the court."

spects from", the claims subject to the restriction requirement). Examiners' compliance with MPEP § 804.01 may account for the absence of court decisions on the precise fact pattern before us and the consequent "first impression" status of the case in this court.

■ We are presented here also with that procedural quirk in the law whereby the nonappealable becomes reviewable and piecemeal litigation becomes permissible. The district court's grant of summary judgment to Lectra was an interlocutory partial judgment not appealable absent certification. Fed.R.Civ.P. 54. The denial of Gerber's motion for summary judgment is interlocutory, nonfinal and nonappealable. *Glaros v. H.H. Robertson*, 797 F.2d 1564, 1573, 230 USPQ 393, 399 (Fed.Cir.1986), *cert. dismissed*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987) (the denial of summary judgment merely establishes that a trial is necessary).

The denial of Gerber's "alternative" request for a preliminary injunction is appealable under 28 U.S.C. § 1292(c)(1), but would normally be incapable of review because the district court expressed no reasons or findings in its support. *Pretty Punch Shoppettes, Inc. v. Hauk*, 844 F.2d 782, 784, 6 USPQ2d 1563, 1565 (Fed.Cir. 1988). In view of the district court's silence, the parties on appeal properly refrained from arguing the four factors involved in the grant or denial of a preliminary injunction. On the apparent but unexpressed assumption that the denial rested on the grant of summary judgment to Lectra, the parties here focus exclusively on the merits of that grant.

Forced to the same assumption, i.e., that the court denied the preliminary injunction because its summary judgment of invalidity clearly precluded preliminary relief to ·Gerber, we review the merits of that summary judgment because it is "closely interrelated factually" to the preliminary injunction. *Intermedics Infusaid, Inc. v. Regents of the University of Minnesota*, 804 F.2d 129, 134, 231 USPQ 653, 657 (Fed. Cir.1986). Thus through the magic of Section 1292(c)(1), the unappealable partial

judgment to Lectra must be reviewed as though it were appealable, and the result of that review in this case is to affirm the denial of the motion for preliminary injunction.

■ The district court here held that there was no "same invention" type double patenting because, in its view, one using the structure set forth in claims 15 and 16 would not infringe claim 23 (with its limitation to means for moving the cutter). The court, however, determined that "obviousness-type" double patenting is present. The latter is a judge-made criterion adopted out of necessity where the courts were faced with a situation in which claims in two applications or patents were not drawn precisely to the *same* invention, but were drawn to inventions so very much alike as to render one obvious in view of the other and to effectively extend the life of the patent that would have the earlier of the two issue dates. *In re Thorington*, 418 F.2d 528, 534, 163 USPQ 644, 648 (CCPA 1969), *cert. denied*, 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649, 165 USPQ 290 (1970).

Because we find no error in the grant of summary judgment of invalidity, Gerber necessarily cannot possibly establish a basis for a preliminary injunction. Accordingly, we affirm the denial of Gerber's motion for preliminary injunction and deny its request for a remand for consideration of that motion.

### The Appeal

Gerber mounts a dual attack. First, Gerber proffers an argument based on absolutism, i.e., that the third sentence of 35 U.S.C. § 121 absolutely precludes invalidity based on anything in the '492 patent because that patent cannot under any circumstances whatever be used as a "reference". Second, Gerber says claims 15 and 16 of the '154 patent are consonant with the claims not elected in its response to the restriction requirement. With admirable candor, Gerber does not challenge the view that obviousness-type double patenting is present if § 121 is rendered inapplicable by nonconsonance of Claims 15 and 16.

*Section 121*

Section 121 provides:

If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application. A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as result of such requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is filed before the issuance of the patent on the other application. If a divisional application is directed solely to subject matter described and claimed in the original application as filed, the Commissioner may dispense with signing and execution by the inventor. The validity of a patent shall not be questioned for failure of the Commissioner to require the application to be restricted to one invention.

In arguing that Section 121's third sentence is a clear, unambiguous, and absolute prohibition against any use of the patent issued on the parent application, Gerber reads that sentence in isolation. The applicable rule of statutory interpretation, however, requires that the third sentence be read in the context of the entire statutory provision. *Kelly v. United States*, 826 F.2d 1049, 1053 (Fed.Cir.1987).

■ Section 121 provides for restriction when "independent and distinct inventions" are claimed in one application. The prohibition against use of a parent application "as

a reference" against a divisional application applies only to the divisional applications that are "filed as a result of" a restriction requirement. Plain common sense dictates that a divisional application filed as a result of a restriction requirement may not contain claims drawn to the invention set forth in the claims elected and prosecuted to patent in the parent application. The divisional application must have claims drawn only to the "other invention." *See Lerner v. Ladd*, 216 F.Supp. 81, 84, 136 USPQ 624, 626 (D.D.C.1962) (same invention double patenting).

It is true that the disclosure in the patent containing the elected claims cannot be used as a "reference" on which to reject a claim in a divisional application under 35 U.S.C. § 103, for that disclosure is the applicant's and is not in the "prior art." *In Re Stempel*, 241 F.2d 755, 760, 113 USPQ 77, 81 (CCPA 1957). That is not to say, however, that the elected claims may not be looked to in assessing compliance with the prohibition against claiming the same invention in two patents.[2] In this regard, the phrase "obviousness type" may have been an unfortunate choice, for, as here, the claims in the divisional application may be actually drawn (though in variant language) to the same invention as that set forth in the elected claims. As discussed below, that phenomenon may be viewed as a failure to keep the claims in the divisional application "consonant."

Gerber cites language appearing in *Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.*, 784 F.2d 351, 228 USPQ 837 (Fed.Cir.), *cert. dismissed*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986), where the restriction was between process and catalyst composition claims and the district court invalidated the process patent for "same invention" type double patenting. Holding that the inventions were not the same, this court reversed, adding:

2. One of the drafters of § 121, Giles S. Rich (now a judge of this court) gave a speech on the 1952 Act before the New York Patent Law Association in 1952. The major parts of that speech were printed in R. Calvert, the Encyclopedia of Patent Practice and Invention Management. In

a part not reprinted, Judge Rich said (speaking of § 121):

There may be a question about the applicability of this section to the double-patenting issue. I believe one patent or application may be cited against the other for this purpose.

The district court made no findings as to obviousness-type double patenting. We agree with [Studiengesellschaft] that Northern Petrochemical offered no evidence of the scope and content of the pertinent art, other than the '115 patent, the level of skill in the art, or what would have been obvious to a person skilled in the art. Consequently, we hold that obviousness-type double patenting is not involved in this case.

Even if Northern Petrochemical had attempted to raise this issue before the district court, the defense of obviousness-type double patenting would not have been available in light of 35 U.S.C. § 121.

784 F.2d at 355, 228 USPQ at 840.

Gerber's reliance on the last sentence quoted above is unavailing. The court having stated that obviousness-type double patenting was not "involved in this case", the quoted last sentence was pure dictum. In *Studiengesellschaft*, moreover, there was no question that the patentee's claims were consonant with those not elected in responding to the restriction requirement.

The remedial purpose of Section 121 is well described in *Studiengesellschaft*, 784 F.2d at 358–61, 228 USPQ at 842–44 (Newman, J., concurring). To gain the benefits of Section 121 there outlined, however, Gerber must have brought its case within the purview of the statute, i.e., it must have limited the claims in its divisional application to the non-elected invention or inventions. As set out below, Gerber failed to do so. We do not, therefore, disserve any remedial purpose in holding Section 121 inapplicable in this case.

### Consonance

Consonance requires that the line of demarcation between the "independent and distinct inventions" that prompted the restriction requirement be maintained. Though the claims may be amended, they must not be so amended as to bring them back over the line imposed in the restriction requirement. Where that line is crossed the prohibition of the third sentence of Section 121 does not apply. *Cf. In re Ziegler*, 443 F.2d 1211, 1215, 170 USPQ 129, 131–32 (CCPA 1971) (Section 121's prohibition does not apply where restriction requirement withdrawn because divisional application no longer filed "as a result of" the restriction).

A consonance requirement is consistent with the legislative purpose behind Section 121. *See Studiengesellschaft*, 784 F.2d at 358–61, 228 USPQ at 842–44 (Newman, J., concurring). Congress could not have intended to deny all inquiry into whether the restriction requirement it established in Section 121 had been disregarded during prosecution of a divisional application.

### Claims 15 and 16 Are Not Consonant

■ The presence or absence of consonance will necessarily depend upon analysis of the involved claims. As a fall back position from its position that the '492 patent cannot be used for any purpose, Gerber says the district court erred in holding claims 15 and 16 of the '154 patent so like "cutting apparatus" claim 23 of the '492 patent as to be not consonant with the claims not elected in responding to the restriction requirement. Gerber says that claim 15 is directed to the subcombination of a work holding means in the "environment" of a machine having a cutting blade.[3]

That "a tool in the form of a cutting blade" appears in the preamble of claim 15 is not determinative of whether it is a claim limitation. *See Corning Glass Works v. Sumitomo Elec., Inc.*, 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed.Cir.1989). Where words in the preamble "are necessary to give meaning to the claim and properly define the invention," they are deemed limitations of the claim. *Perkin–Elmer Corp. v. Computervision Corp.*,

---

**3.** Gerber also argues that claim 15 was amended at the examiner's "insistence" to "better define [the work holding means] over the prior art." An applicant is at liberty to resist any such suggestion, however, and if the claim was improper in the divisional application, the applicant's acceptance of that claim cannot be excused on the ground that "the examiner made me do it."

732 F.2d 888, 896, 221 USPQ 669, 675 (Fed. Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *see Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 866, 228 USPQ 90, 92 (Fed.Cir.1985).

The cutting blade is "necessary to give meaning" to claims 15 and 16 and "properly define the invention." *Perkin–Elmer,* 732 F.2d at 896, 221 USPQ at 675. The cutting blade appears not only in the preamble, but is referenced repeatedly in the body of the claim. It is integral to the claim itself. Moreover, Gerber's Remarks accompanying a May 7, 1973 amendment referred to the cutting blade as a limitation of claim 15 and relied on the cutting blade penetration of the support means to distinguish the prior art. Hence the cutting blade is not merely an aspect of the claim environment, but an affirmative limitation of claim 15. Claim 16 depends from claim 15 and thus incorporates all the limitations of that claim.

In its brief Gerber agrees that the cutting blade may be a claim limitation without which there can be no infringement. It then asserts that the cutting blade is not an element of the subcombination to which the claim is drawn, which is another way of stating its position that the cutting blade is part of the "environment".

When it made the cutting blade a limitation of claims 15 and 16 Gerber crossed back over the line of demarcation between the "cutting apparatus" claims and "work holding means" claims drawn by the examiner in the restriction requirement. Gerber originally included in the divisional/continuing applications (that resulted in the '154 patent) the claims to the work holding means. After numerous amendments, Gerber incorporated as a limitation the cutting blade of elected claim 23 of the '492 patent and thereby rendered claims 15 and 16 non-consonant with those not elected in its response to the restriction requirement.

## CONCLUSION

The inventions set forth in claims 15 and 16 of the '154 patent are obvious variants of the invention set forth in claim 23 of the '492 patent. Invalidation of the '154 patent for obviousness-type double patenting was therefore appropriate.

The district court's denial of Gerber's motion for a preliminary injunction, in view of its proper grant of Lectra's motion for summary judgment, is affirmed.

AFFIRMED.