979 F.2d 216
 25 U.S.P.Q.2d 1954
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AMERICAN HOME PRODUCTS CORPORATION and Herchel Smith,
Plaintiffs-Appellees,
v.
JOHNSON & JOHNSON and Ortho Pharmaceutical Corporation,
Defendants-Appellants.
 No. 92-1090.
 United States Court of Appeals, Federal Circuit.
 Sept. 10, 1992.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined March 4, 1993.
 
 Before MAYER, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, and PLAGER, Circuit Judge.
 PLAGER, Circuit Judge.
 
 
 1
 American Home Products Corporation (AHP) is the owner of U.S. Patent No. 4,002,746 (the '746 patent), which relates to the use of products for contraception. AHP sued Johnson & Johnson and Ortho Pharmaceutical Corporation (J & J) for infringement of the '746 patent, and asks for a preliminary injunction to preclude J & J from marketing its allegedly infringing product. J & J appeals from the memorandum opinion and order of the United States District Court for the Eastern District of Pennsylvania, preliminarily enjoining J & J from marketing the contraceptive compound commonly referred to as 'norgestimate.' American Home Products Corporation v. Johnson & Johnson, 22 UPSQ2d 1561, 1991 WL 255825 (E.D.Pa.1991) (Trial Court ). The preliminary injunction was based on an application of the doctrine of equivalents. In addition, J & J appeals the district court's denial of its motion for summary judgment on its defense of res judicata. Because the trial court's analysis of the likelihood of proving infringement under the doctrine of equivalents did not set forth sufficient factual support for its legal conclusion and did not take into account a critical equitable aspect, we vacate and remand that part of the trial court's judgment. The appeal of the denial of J & J's motion for summary judgment is dismissed for lack of jurisdiction.
 
 BACKGROUND
 
 2
 AHP and J & J both manufacture and market products in the contraceptive market. The '746 patent claims both a particular class of progestationally active therapeutic compositions and a method of providing steroid therapy comprising use of those compositions. The '746 patent issued on January 11, 1977. On June 4, 1990, AHP requested reexamination of the '746 patent. On September 3, 1991, the Patent and Trademark Office (PTO) issued a reexamination certificate for the '746 patent, adding the following claim:
 
 
 3
 6. A method of preventing conception in a female which comprises administering a therapeutic composition comprising a progestationally effective amount of 17-a-ethynyl-18-methyl-19-nortestosterone 17-acetate and a pharmaceutical carrier.
 
 
 4
 17-a-ethynyl-18-methyl-19-nortestosterone 17-acetate is known by the common name 'norgestrel-17-acetate.' Claim 6 is the claim at issue in this suit.
 
 
 5
 AHP owned two closely related patents, both of which have expired. U.S. Patent No. 3,666,858 (the '858 patent) claimed a method of preventing conception with a closely related chemical compound known as 'norgestrel.' That patent expired on May 30, 1989. U.S. Patent No. 3,959,322 (the '322 patent) contained composition of matter claims for the chemical compounds norgestrel and norgestrel-17-acetate. This patent, which expired on November 26, 1991, was the subject of previous litigation between the two parties. Ortho Pharmaceutical Corp. v. Smith, 18 USPQ2d 1977, 1990 WL 121353 (E.D.Pa.1990) (AHPI), aff'd 959 F.2d 936, 22 UPSQ2d 1119 (Fed.Cir.1992). All of these AHP patents are interrelated as divisionals and continuations-in-part.
 
 
 6
 J & J's chemical compound norgestimate is structurally quite similar to the AHP family of related chemical compounds. It is covered by U.S. Patent No. 4,027,019, ('019 patent), owned by Ortho, which is not involved in this litigation. Norgestimate is a structural derivative known as an oxime, and AHP concedes that it is not within the literal language of claim 6 of the '746 patent (the patent in suit). Instead, AHP relies heavily upon the trial court's opinion in AHP I in arguing that the use of norgestimate is an infringing equivalent of claim 6. In AHP I, which addressed only the compounds themselves, J & J conceded that norgestimate literally infringed claims 40 and 43, which were broader composition of matter claims. 18 USPQ2d at 1985. J & J did not appeal the AHP I trial court's alternative holding that norgestimate infringed claims 5 and 19 of the '322 patent, claiming respectively the chemical compounds norgestrel and norgestrel-17-acetate, under the doctrine of equivalents. 959 F.2d at 937, 22 USPQ2d at 1122.
 
 
 7
 AHP proposes two theories for finding that the use of norgestimate is the equivalent of method claim 6. See Figure 1, attached. First, AHP argues that a significant amount of the ingested norgestimate metabolizes to norgestrel through the norgestrel-17-acetate intermediate shown in Route A, and that this fact alone is sufficient to constitute infringement under the doctrine of equivalents. We shall refer to this as the 'direct equivalence' theory.
 
 
 8
 The second theory, which we shall call the 'double equivalence' theory, essentially argues that norgestimate and norgestrel-17-acetate are equivalent to each other because both are equivalent to norgestrel. Thus the second theory encompasses Route B as well as Route A. AHP claims that norgestrel-17-acetate exerts its contraceptive effect in the female body through metabolism to norgestrel; that norgestimate is likewise metabolized to form norgestrel (via Routes A and B); and thus use of norgestimate infringes claim 6 because both norgestimate and norgestrel-17-acetate function in the same way (metabolizing to norgestrel) and achieve the same result (contraception).
 
 
 9
 J & J responds to these theories by arguing that the only relevant 'equivalence' is that portion of norgestimate which metabolizes to norgestrel-17-acetate. In J & J's view, only the norgestrel-17-acetate physically present in the bloodstream meets the claim limitation "progestationally effective amount of [norgestrel-17-acetate]." Norgestrel-17-acetate which further metabolizes to the progestationally active species norgestrel is not the subject of that claim limitation, by J & J's reading.
 
 DISCUSSION
 A.
 
 10
 A preliminary injunction, generally intended to preserve the status quo pending full trial, takes into account four factors--likelihood of success, irreparable harm, balance of hardships, and the public interest. Chrysler Motors Corp. v. Auto Body Panels, Inc., 908 F.2d 951, 952, 15 USPQ2d 1469, 1470
 
 
 11
 Ordinarily, infringement means literal infringement of the limitations contained in the patent claims. When necessary to protect the rights of the patentee from fraud or other inequitable abuse, infringement may be based on the doctrine of equivalents. In order to prove the likelihood of infringement under the doctrine of equivalents, the patentee must demonstrate that the allegedly infringing product performs substantially the same function in substantially the same way, and achieves substantially the same result. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097
 
 
 12
 But the doctrine of equivalents is not an automatic second prong to every infringement charge. It is an equitable remedy available only upon a suitable showing. AHP must put forth proof of the equities and the trial court must provide sufficient explication of its reasoning to support any finding of infringement under the doctrine of equivalents. See London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1458 (Fed.Cir.1992).
 
 
 13
 The claim at issue here is a method of use claim. As the trial court correctly noted, claim 6 first must be construed. With regard to the key issue here, the trial court's claim interpretation is not clear from its opinion. Specifically, the trial court must interpret in light of the specification and the prosecution history the critical phrase "progestationally effective amount of [norgestrel-17-acetate]." Does this claim limitation support either of AHP's theories, or does it mean what J & J states it to mean? This distinction is critical to determining the first step in equivalence analysis: what exactly is the claimed activity to which the accused is said to be equivalent? Although claim interpretation is a matter of law, it may occasionally turn on factual disputes as to the meaning of a term. Accordingly, we decline at this time to address interpretation of claim 6, and leave this issue for the trial court on remand.
 
 B.
 
 14
 The trial court based its holding of equivalence on AHP I, which involved composition of matter claims 5 and 19 of the '322 patent, claiming norgestrel and norgestrel-17-acetate, respectively. The precise factual basis for the trial court's holding that use of norgestimate was equivalent to the use of norgestrel-17-acetate is unclear. The opinion states: "Norgestimate ... is a variant of norgestrel and its 17-acetate, norgestrel-17-acetate." Trial Court, 22 USPQ2d at 1562, 1991 WL 255825 (emphasis added). The trial court later reaches the ultimate legal conclusion that "[n]orgestimate has been declared judicially to be the equivalent of norgestrel-17-acetate." 22 USPQ2d at 1567, 1991 WL 255825. Yet the trial court quotes as support a passage from AHP I which holds that norgestimate and norgestrel are equivalent. Id. Thus, the trial court either confuses norgestrel with norgestrel-17-acetate, or regards any distinction as irrelevant.
 
 
 15
 However, the distinction between the two species, though seemingly minor, has significant equitable import in light of the '858 patent. If the trial court based its holding on the double equivalence argument, then the trial court must consider the now-expired '858 patent, which claimed the contraceptive use of norgestrel. On appeal, AHP vigorously advocated the double equivalence theory (Routes A plus B). Yet, AHP already has had a full 17 year period of protection under the '858 patent for the contraceptive use of norgestrel.[1] Upon expiration of that patent, the contraceptive use of norgestrel became dedicated to the public. J & J is free to market its own norgestrel contraceptive at this point; it is also free to market a norgestimate contraceptive, even one which functions by converting to norgestrel, as long as that conversion does not occur via the norgestrel-17-acetate metabolite (Route A) in such a way as to meet the "progestationally effective amount" limitation of claim 6. Accordingly, any metabolism to norgestrel which occurs via Route B is irrelevant to the equivalence inquiry in this case.
 
 C.
 
 16
 In the alternative, AHP argues infringement based upon the direct equivalence theory depicted in Route A. However, there are no particularized factfindings which support this theory. The trial court in AHP I had no need to distinguish between the two pathways, as the '322 patent implicated direct norgestimate--norgestrel equivalence (claim 5). Finding of fact 68 fails to distinguish between norgestrel and norgestrel-17-acetate, and findings of fact 69-73 refer solely to norgestrel. Thus, those fact findings are insufficient to support the direct equivalence argument.
 
 
 17
 J & J claims that more detailed scientific evidence regarding the metabolic pathways of these compounds is now available, indicating that norgestimate produces such a small quantity of norgestrel-17-acetate in the bloodstream that it would not meet the "progestationally effective" limitation. Should the trial court reject J & J's proffered claim interpretation, the burden is upon AHP to provide this factual evidence in order to demonstrate its likelihood of proving infringement by equivalents. In the present record, there is no factual evidence as to how much of that norgestrel results from Route A vs. Route B--a critical distinction. See Moleculon Research Corp. v. CBS, Inc., 872 F.2d 407, 410, 10 USPQ2d 1390, 1393 (Fed.Cir.1984) ("In view of that uncertainty [competing scientific theories regarding most desireable amino acid ratios in a nutritional formulation], the Commission could readily have concluded that American failed to meet its burden of proving infringement.").
 
 D.
 
 18
 Any further consideration by the trial court of infringement by equivalence will also necessitate a fresh weighing of the equities. Although it is not our function to weigh those equities on appeal, especially at the preliminary injunction stage, in light of the record before us we highlight some important equitable aspects for the trial court's consideration. First, and perhaps most importantly, the record does not suggest that J & J designed the norgestimate product with knowledge of the metabolic pathway shown in Figure 1 and with the purpose of using such later technology to circumvent any claim language. Second, AHP has not shown that norgestimate is an insubstantial change--particularly in light of the '019 patent. Third, there is nothing to indicate that at the time of filing, AHP recognized that norgestrel-17-acetate was in fact a prodrug for norgestrel, and that J & J misappropriated this knowledge.
 
 
 19
 A preliminary injunction in this case has the effect of reducing competition in the marketplace when plaintiff's patents entitling it to exclusive rights to market norgestrel as a method of contraception have expired; it will cause irreparable losses to defendant due to the limited shelf-life of the drugs being kept from the market; and it raises difficult questions of the application of the equitable powers of the court under the doctrine of equivalents. In such a case, more particularized fact-finding is required to support the conclusion that J & J's method of using norgestimate contains all the claim limitations of claim 6 and is an infringing equivalent. Should such a conclusion be reached, the trial court must then re-weigh the equities in light of the cited case law.
 
 
 20
 On the record before us it cannot be said that AHP has a sufficient likelihood of success to justify a preliminary injunction with all the possible adverse effects upon the defendant and the public. A proper remedy can be fashioned by the trial judge after a full determination of the difficult issues yet to be resolved.
 
 E.
 
 21
 In response to AHP's charge of infringement, J & J raised the defense of res judicata, based upon the prior '322 litigation. The trial court denied J & J's motion for summary judgment on this issue; J & J now seeks appellate review. The denial of J & J's summary judgment motion is interlocutory in nature. It is not sufficiently intertwined with AHP's motion for preliminary injunction so as to provide this court with jurisdiction, absent certification by the trial court. Fed.R.Civ.P. 54. Compare Gerber Garment Technology, Inc., v. Lectra Sys., Inc., 916 F.2d 683, 686
 
 CONCLUSION
 
 22
 Accordingly, we vacate the preliminary injunction and remand for further proceedings consistent with this opinion.
 
 
 23
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 
 24
 MAYER, Circuit Judge, dissenting in-part and concurring in-part.
 
 
 25
 I would affirm the order of the district court granting a preliminary injunction in favor of American Home Products Corp. and Herchel Smith (AHP) against Johnson & Johnson Corp. and Ortho Pharmaceutical Corp. (J & J). The question for us is whether the district court "abused its discretion, committed an error in law, or seriously misjudged the evidence." Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1449 (Fed.Cir.1988). We consider whether there is a likelihood that AHP will succeed in proving infringement. J & J has not appealed the district court's conclusions on validity, irreparable harm absent an injunction, whether the balance of hardships tips in AHP's favor, or the impact of an injunction on the public interest.
 
 
 26
 The district court has already found that J & J's norgestimate infringed Claim 19 of AHP's '322 patent for norgestrel acetate. Ortho Pharmaceutical Corp. v. Smith, 18 USPQ2d 1977, 1990 WL 121353 (E.D.Pa.1990), aff'd, 959 F.2d 936 (Fed.Cir.1992). Issue preclusion forecloses discussion on that matter. Since the composition norgestimate infringes the patent for the composition norgestrel acetate, it is not surprising the district court held the method of using J & J's norgestimate as a contraceptive was likely to infringe AHP's patent on the method of using norgestrel acetate as a contraceptive. The findings on likelihood of successfully proving infringement, including whether the use of norgestimate is the equivalent of the use of norgestrel acetate, are fully supported. J & J's norgestimate containing contraceptive and AHP's norgestrel acetate containing contraceptive function in substantially the same way, by metabolizing to norgestrel, to achieve the same result. See Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). Because our patent system permits method claims, it is not unexpected that sometimes a composition patent may expire before a patent on a method of using that composition. I think on the record so far made AHP has shown a likelihood of success in proving infringement.
 
 
 27
 The court is concerned that under AHP's theory of infringement, that norgestrel acetate and norgestimate prevent contraception by metabolizing into norgestrel, the expired method of use patent for norgestrel may be given life beyond its years and that the doctrine of equivalents is being stretched too far. This is an interesting intellectual inquest, but it is singularly inappropriate for this court to address it because it was not raised by J & J on appeal, and the validity of the '746 patent was not appealed.
 
 
 28
 I agree with the court that we have no jurisdiction over the denial of J & J's summary judgment motion.
 
 
 
 [1]
 This is not a situation in which the first patent to issue is a narrow species patent and the second, a broader genus patent. In such a case, it is of course logical that use of the species disclosed in the first patent after its expiration continues to infringe the genus patent. Here, both the '756 and the '858 patents are narrow species patents, spun off as divisionals from a common parent application