**FERAG AG, an Alien Corporation and Ferag, Inc., a U.S. Corporation, Plaintiffs,**

v.

**GRAPHA–HOLDING AG, an Alien Corporation, Defendants.**

**Civ. A. No. 91–2215–LFO.**

United States District Court, District of Columbia.

Sept. 20, 1995.

Memorandum Denying Reconsideration Oct. 26, 1995.

Richard G. Lione, Willian Brinks Hofer Gilson & Lione, Chicago, Illinois and Robert W. Zelnick, and Donna M. Tanguay, Willian Brinks Hofer Gilson & Lione, Washington, DC, for Plaintiffs Ferag AG and Ferag, Inc.

David R. Francescani, Joseph R. Robinson, Robert C. Sullivan, Jr., Darby & Darby, New York City, and Michael T. Platt, and Jeffrey M. Petrash, Dickinson, Wright, Moon, Van Dusen & Freeman, Washington, DC, for Defendant Grapha–Holding AG.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs Ferag AG and Ferag, Inc. and defendant Grapha–Holding AG are two of only a very few companies that manufacture bindery equipment used to assemble or join together pages of brochures and magazines. Even in this age of computers, the demand for innovations in the binding of printed materials continues since the output of printing presses greatly outpaces the output of bindery machines. *See* Declaration of Ted W. Mayer at 3. The goal of these new developments is simply to increase the speed of the binding process, which has been limited by the fact that when sheets of paper move too quickly, they tend to fold, crease, tear, and flutter.

At issue in this case is defendant's Weber patent, which discloses a bindery machine that plaintiffs claim has been anticipated by plaintiffs' prior Meier '755 patent. Plaintiffs also ask for a declaratory judgment that two of plaintiffs' machines, one introduced at an industry show in 1991 (the "Print '91" machine) and the other shown in September 1993 (the "IPEX" machine), do not infringe the Weber patent. Defendant has filed a counterclaim asserting that plaintiffs' Print '91 machine infringes its Weber patent.

The Weber patent contains Claims 1–27. Currently pending is plaintiffs' motion for summary judgment that would invalidate Weber Claims 1–3, 5–11, 17–20, 26, and 27, and plaintiff's motion for summary judgment of the non-infringement of Weber Claims 4, 12–16, and 21–25. As to invalidity, defendant denies that Weber Claims 1–3, 5–11, 17–20, 26, or 27 are invalid as anticipated by the Meier '755 patent. Thus, only invalidity Claims 1, 6, 9, 17–19, 26–27 remain at issue. As to non-infringement, defendant agrees that Claims 12–16, 21, and 25 are not infringed; leaving in dispute infringement Claims 4 and 22–24. For the reasons stated below, an accompanying Order grants plaintiffs' motion with respect to non-infringement and denies plaintiff's motion with respect to invalidity and grants summary judgment to the defendant on that issue.

## I.

### A.

The patent in dispute is U.S. Patent 4,735,-406, which discloses a "Machine For Making Brochures and the Like," invented by Walter Weber and assigned to defendant Grapha–Holding AG. It issued on April 5, 1988, from an application filed May 28, 1986, based on a Swiss application which was filed on June 4, 1985. *See* drawing attached as Appendix I.

The machine disclosed by the Weber patent uses a *rotating* cylinder with several chains or carriers radiating from the cylinder-like paddles on a paddlewheel. (The single carrier, *non-rotating* saddle stitcher has long been the industry standard.) Individual folded sheets move linearly along the edge of each carrier (i.e., parallel to the axis of the cylinder), and the entire cylinder rotates. The accumulated pages are then carried to the saddles, where they are stapled. The increase in speed comes from the fact that there are several carriers rotating beneath the feeder rather than the traditional single chain or carrier moving linearly beneath the feeder.

For purposes of plaintiffs' non-infringement claim, two other aspects of the Weber patent are relevant: its stapling device and its sheet feeding units. Stapling takes place on the saddles, which are downstream of the carriers gathering the sheets of the brochure together. The connecting apparatus "comprises two staple applicators mounted on a yoke." Weber col. 6, l. 2–3. The yoke rocks in a pendulum movement around the outer perimeter of the cylindrical drum. Each applicator is fitted with means for applying as many staples as necessary to ensure that the sheets of each brochure are secured to each other. The applicator staples the brochures together at the folds of the collected sheets; and Claim 4 further defines the connecting means as "includ[ing] means for *simultaneously* stapling the backs of sheets of a plurality of accumulations to each other" (emphasis added).

The other aspect relevant to plaintiffs' non-infringement claim is the Weber device's "sheet feeding units," which are limited by several Claims throughout the patent. For the purposes of plaintiffs' motion, only Claims 22–24 are relevant. In Claim 22, the Weber patent discloses "[t]he machine of claim 1, wherein each of said feeding units comprises means for delivering a stream of partially overlapping sheets wherein each preceding sheet overlies the next-following sheet." Claims 23 and 24 are dependent upon Claim 22. Claim 23 discloses "[t]he machine of claim 22, wherein said delivering means includes means for conveying the sheets of the respective stream with the folded backs constituting the leaders of the sheets." Claim 24 discloses "[t]he machine of claim 23, wherein each of said feeding units further comprises means for opening successive sheets of the respective stream including means for engaging the folded backs of the sheets."

### B.

The prior art which plaintiffs allege anticipates the Weber patent is U.S. Patent 4,408,-755, a "Method and Apparatus for Forming Multi-sheet Printed Products, Especially Newspapers and Magazines," invented by Jacques Meier and owned by plaintiffs ("Meier '755"). The Meier '755 patent issued on October 11, 1983 (approximately four-and-a-half years before the Weber patent), from an application filed February 17, 1981 based on a Swiss application which was filed on March 11, 1980. *See* drawing attached as Appendix II. Like the Weber patent, the Meier '755 patent is designed to form multi-sheet printed products such as newspapers, magazines and brochures.

The machine disclosed by the Meier '755 patent also consists of a cylindrical drum containing radially protruding support ribs spaced evenly from each other around the drum. The drum has three infeeder or inlet sections arranged next to one another. Three transport devices feed the paper into the inlet sections. The transport device consists of a series of individual grippers, which remove folded sheets of paper from a stack.

The stack of folded paper delivered by the transport device into the inlet sections is a single, continuous, interconnected web of paper similar to the continuous form paper used in a dot matrix or daisy wheel computer

printer. In order to avoid the difficulties associated with the "gathering" of individual signatures or sheets, the Meier '755 device transports the paper without cutting the continuous web into individual sheets.

For purposes of plaintiffs' non-infringement motion, the construction and operation of plaintiffs' Print '91 machine is relevant in two respects: its stapling mechanism and its sheet feeding units. The Print '91 machine's stapling device is described in detail in U.S. Patent No. 5,172,897 (A "Process and Apparatus for Collecting and Stapling Folded Printed Sheets") invented by Egon Hänsch and assigned to plaintiff Ferag AG ("Hänsch '897"). The machine's stapling station is located downstream of the feed stations, where the sheets have been gathered together. The stapling mechanism consists of a "self-enclosed track of travel for stapling heads extend[ed] around a collector drum" with several supports. "A stapling head is assigned to each support. The stapling heads rotate mutually synchronously about the axis of rotation of the drum." Hänsch '897 Abstract. The heads move with the carriers and rotate at a rate of velocity essentially equal to the velocity of the supports. As each head rotates past a single, stationary cam, two staples are driven into the corresponding sheet collection, thereby stapling on the successive carriers as they rotate past the cam in serial fashion.

As described in the Egon Hänsch affidavit, the Print '91 machine's sheet feeding units are comprised of gripper conveyors, which carry the sheets tangentially towards carriers on a cylindrical drum. The carriers rotate around the drum. The cut-edges of the sheets are opened, and the gripper conveyor then drops the sheets onto the carriers. At the time each sheet is held by the gripper, it is neither attached to nor overlapped with any of the sheets that precede or follow it.

## II.

Federal law provides patent protection for an invention unless

the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by

the applicant for patent. 35 U.S.C. § 102(a).

When a patent issues, there is a statutory presumption that each claim of the patent is valid. 35 U.S.C. § 282. A party asserting that a patent claim is anticipated under 35 U.S.C. § 102 "must demonstrate, among other things, identity of invention" between the claimed invention as properly construed and the disclosure of the reference. *See Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed.Cir.1992), *Corning Glass Works v. Sumitomo Electric USA, Inc.,* 868 F.2d 1251, 1255–56 (Fed.Cir.1989). Accordingly, anticipation is established "only when a single prior art reference discloses, expressly or under principles of inherency, each and every element of a claimed invention." *Continental Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1267 (Fed.Cir.1991). In order to have the Weber patent declared invalid, then, plaintiffs must show that *every* element of the Weber patent is anticipated by the asserted anticipating reference, the Meier '755, and must do so with clear and convincing evidence. 35 U.S.C. § 282.

Although the Weber patent contains 27 Claims, only Claim 1 is relevant to this litigation. The other 26 Claims contain all of the limitations described in Claim 1, the exact language of which is as follows:

A machine for accumulating folded *sheets* into brochures and like products, comprising:

(a) a *sheet* transporting device arranged to advance *sheets* having folded backs in a predetermined direction along a predetermined path and including:

1. at least two elongated parallel carriers and

2. *discrete conveyor means for each of said carriers,*

3. each of said conveyor means having means for advancing *sheets* along the respective carrier; and

(b) means for feeding *sheets* to said carriers so that the backs of the *sheets* straddle the respective carriers, comprising

1. a first feeding unit having means for depositing first *sheets* onto successive

carriers in a first portion of said path and

2. at least one additional feeding unit having means for depositing second *sheets* over successive first sheets in a second portion of said path downstream of the first portion so that the backs of the second *sheets* straddle the backs of the respective first *sheets* and form therewith accumulations of first and second *sheets* wherein the backs of the second *sheets* are accessible. (emphasis added)

In memoranda filed in this Court and in oral argument, the parties agree that whether the Meier '755 patent anticipates the Weber patent depends upon the meaning of "sheets" and upon the meaning of "discrete conveyor means for each of said carriers." Because plaintiffs must show that *every* element of the Weber patent is anticipated by the asserted anticipating reference in order to obtain the declaratory judgment they seek, if either the first or the second point of dispute is found against the plaintiffs, then the plaintiffs' invalidity contention cannot prevail. For this reason, only the "sheets" issue is discussed here, as it is dispositive of this motion.

### A.

Whether the term "sheets" is a claim limitation which must be met to prove anticipation is itself a point of contention between the parties. Plaintiffs maintain that the form of paper used is irrelevant. "[T]he sheets (are not) part of the machine. It's a machine that's working on sheets." Hearing Transcript at 30. Plaintiffs argue that even if "sheets" did specifically "call for discrete or separate sheets, it would not be limited as a matter of law because the limitation does nothing to 'define the invention', i.e., patentably distinguish it from the prior art." Plaintiffs' Memorandum in Response to Defendant's Post–Hearing Memorandum and Proposed Findings of Fact at 7. Defendant disagrees, noting that the term "sheets" is set forth in the preamble of Weber Claim 1 and is repeated eight times in the body of the claim, and contending that the term "sheets" is "necessary to give meaning to the claim and properly define properly the invention,"

and is thus an affirmative limitation of the claim. *Gerber Garment Technology v. Lectra Sys., Inc.,* 916 F.2d 683, 688 (Fed.Cir. 1990).

■ The importance of a term, be it a word used in the claim preamble or in the claim itself, depends upon the "entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1257 (Fed.Cir.1989); *see also In re Stencel,* 828 F.2d 751, 754 (Fed.Cir.1987). In certain circumstances, terms used in a claim preamble and repeated throughout the body of the claim (such as "sheets" in the Weber patent) become claim limitations, and these claim limitations must be taken into account in construing the patent. For example, the term "cutting blade" was interpreted to be a claim limitation because, *inter alia,* it "is referenced repeatedly in the body of the claim. It is integral to the claim itself." *Gerber Garment,* 916 F.2d at 689.

The focus on "sheets" may appear to be inappropriate; as plaintiffs observe, the Weber patent concerns a binding machine, and not the paper on which it operates. Nevertheless, even a brief inquiry toward an understanding of the bindery industry reveals that the role of "sheets" is crucial. Because paper tends to tear or flutter when moved too quickly, the speed of the binding process has always lagged behind that of the printing press, which prints on rolls of paper. Consequently, inventions in bindery appropriately address the problem of how best to handle sheets of paper.

Meier improved the art of bindery by designing a machine with a rotary drum and capable of handling interconnected folded sections in web form. Prior art devices operated only on separate individual sheets. Placing "individual sheets in the correct position upon one another ... require(d) a corresponding great expenditure in machinery and control equipment," however. Meier '755, col. 1, ll. 22–26. By taking a continuous web of paper from the printing press and folding it in zig-zag or fan fashion (rather than cutting it), Meier was able to increase productiv-

**6**

ity without requiring greater expenditures in machinery and control equipment.

Indeed, the Meier '755 patent is exclusive as to the use of sheets in web form:

> Since the individual sheets, which *in each case* form a zig-zag folded web, are interconnected with one another, the mutual position of the sheets of a web is always defined. Meier '755, col. 2, ll. 4–7 (emphasis added).

> Now *in order to implement these and still further objects of the invention* ... the method for the formation of multisheet printed products, especially newspapers and magazines, is manifested by the features that *at least two zigzag shaped, folded webs, each of which is formed by sheets interconnected with one another at fold locations or fold lines extending transverse to the web lengthwise direction,* are deposited in aligned condition upon one another, and these webs are supported at spaced locations at the fold locations, preferably at each second fold location. Meier '755, col. 1, ll. 47–59 (emphasis added).

The language plainly indicates that in order to implement the "object" of the invention, "in each case" and "at least" "two zigzag shaped, folded webs" must be used. Although it was and continues to be industry practice to bind paper together in separate sheet form, the very point of Meier's invention was to avoid the problem of individual, separate sheets by using paper in folded web form. *See also* Weber, cols. 1, 2 (addressing the problem of sheets).

To refute this argument, plaintiffs point out that the Meier '755 patent states that "it is already known in this technology to withdraw individually printed sheets from stacks and to place them upon one another." Meier '755, Col. 1, ll. 20–22. From this, plaintiffs argue that only "for the sake of simplicity and cost alone" did Meier '755 choose to feed sheets interconnected in web form.

The Federal Circuit has observed that "[t]he problem confronted by the inventor must be considered in determining whether it would have been obvious to combine references in order to solve that problem." *Diversitech Corp. v. Century Steps, Inc.,* 850 F.2d 675, 679 (Fed.Cir.1988). The problem confronted by Meier was the problem of sheets. It is illogical for plaintiffs to assert that it is "obvious" that individual sheets could have been used in the Meier '755 and it was only for the "sake of simplicity and cost alone" that sheets in web form were utilized, when, as the plaintiffs' own expert witness has observed, "It is the feeding sections interconnected in a web which *Meier* considered to be an improvement in the art." Al Jeske Decl. ¶ 20. Moreover, plaintiffs' assertion contravenes the language of the Meier '755 patent itself, which states that only paper in folded web form is able to "implement the object ... of the invention."

For these reasons, the Court finds that "sheets" is a claim limitation in the Weber patent.

■ If even a single element or limitation required by the claim is missing from the disclosure of the reference, there can be no anticipation. *See Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548 (Fed.Cir.1983). In order to discern whether "sheets" is missing from the disclosure of Meier '755, it is necessary as an initial matter to define "sheets" as used in the Weber patent.

■ The meaning of "sheets" is a question of proper claim interpretation. Words in a claim are to be given their ordinary and everyday meaning unless the specification indicates otherwise with respect to a particular term. *See Jonsson v. Stanley Works,* 903 F.2d 812, 820–21 (Fed.Cir.1990). The dictionary defines a "sheet" as a "piece of paper of a size suitable for printing esp. of books or other matter of which the page is a subdivision of a larger area—often distinguished from *reel* or *web.*" *Webster's Third New International Dictionary* (1971) (emphasis in original). There is no indication in the Weber patent that any meaning other than the ordinary meaning of sheets was intended.

Plaintiffs argue that *"Weber* Claim 1 is not, in law or fact, limited to coverage of a machine for individually handling separate sheets," because defendant's use of "sheets" in Claim 1 does not specifically exclude any mention of individual or discrete sheets and because defendant never suggested that "it

was critical for his machine to operate on separate sheets." Plaintiffs' Memorandum in Response to Defendant's Post–Hearing Memorandum and Proposed Findings of Fact at 2, 8. Plaintiffs' arguments are unpersuasive.

Defendant did not need to state either that "sheets" means only sheets in individual form or that it is critical for the Weber device to operate on single sheets for the simple reasons that, first, "sheets" and "web" are not synonymous in common usage, and in fact, their meanings are distinct from each other; and second, the usual industry practice was and is to bind paper in individual sheet form. Hence, it was unnecessary for defendant to state that it was "critical for the machine to operate on separate sheets" because it was already presumed—which is precisely why the Meier '755 patent makes clear it was departing from this practice by referring repeatedly and exclusively to "webs." Plaintiffs challenge *Webster's Third* by noting that "webs comprise 'sheets', nevertheless, and folded 'sheets' at that, as *Meier '755* points out"; but the fact that many sheets connected together make a web does not mean that a "sheet" is a "web." Plaintiffs' Memorandum of Law Including Proposed Findings of Fact and Conclusions of Law in Support of its Motion for Summary Judgment at 24.

Under 35 U.S.C. § 102, anticipation "requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Connell,* 722 F.2d at 1548. Plaintiffs fail to meet this requirement: the Meier '755 does not disclose the use of "sheets," an element of the Weber patent. Accordingly, plaintiffs' motion for summary judgment of the invalidity of the Weber patent is denied.

### III.

Defendant has not moved for summary judgment. Defendant has, in fact, filed "Defendant's Statement of Genuine Issues of Material Fact and Counterstatement of Controverted Facts." Nevertheless, summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under rule 56. Accordingly, for reasons stated below, an accompa-

nying Order will grant summary judgment to defendant on the invalidity issue. *See* 10A Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2720, fn. 20 (1983); *Leahy v. District of Columbia,* 833 F.2d 1046, 1047 (D.C.Cir.1987) (noting with approval district court's sua sponte granting of summary judgment to non-movant).

Summary judgment is appropriate when no genuine triable issues of material fact exist and the party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Edwards v. Aguillard,* 482 U.S. 578, 595, 107 S.Ct. 2573, 2583–84, 96 L.Ed.2d 510 (1987). The construction or interpretation of a patent claim is a matter of law. *Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1567–68 (Fed.Cir.1987). Upon consideration of the claim language, it is clear that "sheets" is an important, if not crucial, limitation to the Weber patent. Unless plaintiffs allege that the Meier '755 patent anticipates this limitation, summary judgment is appropriately rendered for defendant as there would be no triable material facts at issue. Plaintiffs have not alleged that the Meier '755 patent anticipates this limitation, and in fact, *enthusiastically concede* that the Meier '755 patent is not able to operate on individual sheets: "Grapha also argues that the *Meier '755* patent does not show a machine which is operating on discrete sheets, either explicitly or *inherently.* This argument is irrelevant since *Ferag admits it is the case!*" Plaintiffs' Memorandum in Response to Defendant's Post–Hearing Memorandum and Proposed Findings of Fact at 4 (emphasis added). (Of course, the Meier '755 patent itself, as noted above, requires paper in web form in order to "implement" the object of the invention.)

This concession is considerable. The concept of "inherent anticipation" is intended to provide " 'modest flexibility' in the rule that 'anticipation' requires that every element of the claim appear in a single reference." *Continental Can Co. USA, Inc. v. Monsanto Co.,* 948 F.2d 1264, 1269 (Fed.Cir.1991). As plaintiffs concede that even under the relaxed rule of "inherent anticipation," the Meier '755 does not anticipate "sheets," there is

no point in reserving this issue for trial. Summary judgment as to plaintiffs' invalidity action on the grounds of anticipation by Meier '755 under 35 U.S.C. § 102(b) is rendered for defendant.

## IV.

Plaintiffs also seek a declaratory judgment that their Print '91 machine and their IPEX machine do not infringe the Weber patent. Plaintiffs have filed a motion for summary judgment of non-infringement of Claims 4, 12–16 and 21–25 with respect to the two machines.

### A.

Whether a declaratory judgment in a patent case shall issue depends on the following:

First, the defendant's conduct must have created on the part of plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must have either produced the device or have prepared to produce that device.... The test, however stated, is objective and *is applied to the facts existing when the complaint is filed.*

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988) (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir. 1987)) (emphasis added).

This test looks both to defendant's conduct and to plaintiff's conduct. Respecting defendant's conduct, "it must be such as to indicate defendant's intent to enforce its patent." *Arrowhead Indus.,* 846 F.2d at 736. Respecting plaintiff's conduct, "plaintiff must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." *Id.*

■ Defendant claims that plaintiffs have failed to pass their part of the test: specifically, that the activities undertaken by plaintiffs with respect to the IPEX machine (first shown in 1993) at the time of the complaint (filed in August 1991) do not constitute "meaningful preparation" to make, sell, or use the machine. Alternatively, defendant

argues that, at the very least, there is a material factual dispute as to plaintiffs' activities regarding the IPEX machine which precludes summary judgment.

It is clear that defendant has raised a material factual dispute as to whether the IPEX machine was properly before the Court when the complaint was filed. Plaintiffs have not introduced any evidence that they had produced or prepared to produce the IPEX machine in August 1991. Nor have they introduced evidence of "a reasonable apprehension" that defendant intended to initiate suit for infringement by the IPEX machine in August 1991.

Because much time has passed since plaintiffs filed their motion through no fault of their own and because plaintiffs may have engaged in further activities relating to the IPEX machine in that intervening period, an accompanying Order denies without prejudice plaintiffs' motion with respect to the IPEX machine. If necessary, plaintiffs may move for leave to amend their complaint. *See* Fed.R.Civ.Pro. 15(a).

### B.

Plaintiffs have moved for summary judgment of non-infringement of Weber Claims 4, 12–16, and 21–25 by the Print '91 machine. Defendant concedes that there has been no infringement of Claims 12–16, 21, and 25. Accordingly, only Claims 4 and 22–24 are at issue in the instant motion.

■ To determine patent infringement, first, a claim must be interpreted to determine its proper scope and meaning; and second, it must be determined whether the accused device (here, the Print '91 machine) is within the scope of the properly interpreted claim. The burden is on the patentee to show infringement, either literal or by equivalents, by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 889 (Fed.Cir.1988). In order to find infringement, the patent claims must be "read on" the accused device, i.e., the allegedly infringing device is examined to see if it is substantially described by the claims.

### 1.

The Patent Act permits the patenting of a "means-plus-function" limitation and provides that:

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. Read broadly, this language "could encompass any conceivable means for performing the function." *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed.Cir.1993). Consequently, the second clause of section 112 is read as confining the breadth of protection otherwise permitted by the first clause. The claim is to be interpreted only as covering the "corresponding structure, material, or acts described in the specification and equivalents thereof" and no more. *See id.* Therefore, "the accused device must employ *means identical to or the equivalent of the structures, material, or acts* described in the patent specification. The accused device must also perform the *identical function* as specified in the claims." *Id.*

Claim 4 is a means-plus-function limitation on the Weber patent and defines the connecting means as "includ[ing] means for *simultaneously* stapling the backs of sheets of a plurality of accumulations to each other." The parties agree that the question of infringement as to Claim 4 turns upon how "simultaneously stapling" is defined. Plaintiffs argue that "simultaneously stapling" means stapling which is "exactly coincident" (citing *Webster's Ninth New Collegiate Dictionary*). Defendant responds that the phrase does not require the two stapling operations to be "exactly coincident" and argues for a looser construction of "simultaneously stapling," a construction by which "there is simultaneous stapling present if two or more stapling mechanisms are involved in some stage of the stapling operation during a set period of time." Defendant's Opposition to Plaintiffs' Motion for Summary Judgment at 33.

Because the statutory mandate of section 112 requires that the claim language be construed to "cover the corresponding structure," the phrase "simultaneously stapling" may mean only what is indicated by the corresponding structure, the Weber patent. Defendant states that "Weber shows two staple applicators simultaneously applying staples to two different accumulations at the *exact same* instant in time," and states also that "the Print '91 machine shows two staple applicators which apply staples to two discrete accumulations *almost* at the same instant in time." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 35.

From this, it can be fairly stated that "simultaneously" does, indeed, mean "exactly" same or coincident because the Weber stapling process is described as occurring at the "exact same" time. It can also be fairly stated—because defendant admits it—that the Print '91 mechanism does not staple at the "exact same" instant in time, but "*almost* at the same instant in time." Defendant notes this difference, but complains that it is "insubstantial": only ⅒ of a second separates "exact" from "almost." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 35. Nevertheless, in the binding industry, even ⅒ of a second may be significant. Given that the purpose of the new inventions is to increase the rate of binding production, the ⅒ of a second difference may be a significant advance in the art.

Defendant does not explain why or why not ⅒ of a second is unimportant. Because the patentee has the burden of proof in an infringement action, defendant's failure to explain why the difference is negligible leads to the conclusion that the Print '91 device does not "employ means identical to or the equivalent of the structures, material, or acts described in the patent specification" and therefore does not infringe the Weber patent under section 112. *See Valmont Indus.*, 983 F.2d at 1042.

For this reason, defendant argues that the doctrine of equivalents applies if the "Court were to adopt Ferag's position

that 'simultaneous stapling' means two stapling operations which are exactly coincident." Defendant's Post–Hearing Reply Memorandum In Opposition to Plaintiffs' Motion for Summary Judgment at 40. The doctrine of equivalents is designed to do equity in those situations in which "there is no literal infringement but liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention." *Hormone Research Foundation v. Genentech, Inc.* 904 F.2d 1558, 1564 (Fed.Cir.1990). Under this doctrine, "infringement *may* be found (but not necessarily) if an accused device performs substantially the same overall function or work, *in substantially the same way,* to obtain substantially the same overall result as the claimed invention." *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987) (citation and footnote omitted) (emphasis added).

■ A comparison of the stapling mechanisms of the Print '91 and Weber devices indicates that the stapling devices do not perform "in substantially the same way." The Print '91 machine uses a rotating ring of concentric staplers, whereas the Weber patent uses a yoke that rocks back and forth in pendulum fashion. *See* Defendant's Post–Hearing Memorandum in Opposition to Plaintiffs' Summary Judgment Motion at 39–40. The Print '91 machine staples in a serial fashion as the stapling head rotates past the cam; in the Weber patent, it does not. And as to the results obtained: the Print '91 machine staples over many cycles on each carrier; Weber staples over one machine cycle or less on each of several carriers.

Even under the doctrine of equivalents, then, the Print '91 machine does not infringe Claim 4 of the Weber patent. Accordingly, an accompanying Order grants plaintiffs' motion for summary judgment on their claim of non-infringement as to Claim 4 of the Weber patent.

2.

Claim 22 of the Weber patent discloses "[t]he machine of claim 1, wherein each of said feeding units comprises means for delivering a stream of partially overlapping sheets wherein each preceding sheet overlies the next following sheet." To understand this claim, it is necessary to refer to the entire patent disclosure and the prosecution history of the patent. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878 (Fed.Cir.1988). Claim 22 depends on Claim 1 because a "claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112, para. 4.

■ Read alongside Claim 1, Claim 22 discloses a sheet feeding unit as a "means for delivering a stream of partially overlapping sheets," Claim 22, and as a "means for depositing . . . sheets onto successive carriers in a first portion of said path." Claim 1. As means limitations, then, the Weber sheet feeding units cover only those feeding units performing identical functions of delivering a stream of sheets to the depositing means and depositing those sheets "in a first portion of said path" as disclosed in Claim 1. *See* Plaintiffs' Reply Memorandum in Support of its Motion for Summary Judgment at 10.

The corresponding sheet feeding units on the Print '91 device are the gripper conveyors referred to as element 5 in defendant's description of the Print '91 machine. *See* Defendant's Memorandum In Opposition to Plaintiffs' Motion for Summary Judgment at 37. These gripper conveyors do not supply sheets in streams. Rather, individual grippers drop individual sheets onto the drum carriers sequentially without any overlap.

Plaintiffs do admit that at some point in the binding process—when the paper is first taken from the printing press—the sheets are in a stream. Plaintiffs' Reply Memorandum in Support of Its Motion for Summary Judgment at 23. In turn, defendant responds that "there is no limitation in the claim as to the location of the stream vis-á-vis the feeding units." Defendant's Post–Hearing Reply Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 25. But Claim 22 is expressly limited by Claim 1, which discloses a "means for depositing . . . sheets onto successive carriers *in a first portion of said path* " (emphasis added). Claim 22 cannot be read as covering any point in the binding process at which sheets are overlapping. Because the corresponding

sheet feeding units of the Print '91 machine do not "deliver[ ] a stream of partially overlapping sheets," the Print '91 machine does not infringe Claim 22 of the Weber patent.

Claims 23 and 24 are dependent upon and include all the limitations of Claim 22. As Print '91 machine does not infringe claim 22, it does not infringe claims 23 and 24 as a logical matter. Accordingly, an accompanying Order grants plaintiffs' motion for summary judgment on its claim of non-infringement of claims 22–24 of the Weber patent.

\*     \*     \*

The Complaint contains a prayer for an injunction against defendant and others from asserting any rights of defendant in U.S. Patent No. 4,735,406, the Weber patent. The plaintiff has not produced evidence, or for that matter, made any argument that would justify an injunction at this time. There is no reason to conclude that defendant would fail to obey this Court's Declarations and Judgment in this matter. It will be time enough to consider enforcement when defendant and/or others should engage in such lawless conduct.

12

Fig. 3

Fig.6

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 20th day of September, 1995 hereby

ORDERED and DECLARED: that Claims 1–3, 5–11, 17–20, 26 and 27 are not invalid under 35 U.S.C. § 102(b) as anticipated by Meier U.S. Patent No. 4,408,755; and it is further

ORDERED and DECLARED: that Plaintiffs' Print '91 machine DOES NOT INFRINGE Claims 4 and 22–24 of Defendant's U.S. Patent No. 4,735,406; and it is further

ORDERED: that Plaintiffs' motion for summary judgment that its IPEX machine does not infringe Defendant's U.S. Patent No. 4,735,406 is hereby DENIED WITHOUT PREJUDICE.

## MEMORANDUM ON RECONSIDERATION

Defendant Grapha–Holding has filed a request to reconsider that part of the September 20, 1995 Memorandum and Order granting plaintiffs summary judgment of non-infringement of claim 4 of the Weber patent by Ferag's Print '91 machine on the theory of literal infringement and on the theory of infringement by doctrine of equivalents. Claim 4 of the Weber patent describes "The machine of claim 3, wherein said connecting means includes means for simultaneously stapling the backs of sheets of a plurality of accumulations to each other."

### I.

The parties agreed that the issue of whether the Print '91 machine literally infringes claim 4 of the Weber patent turned on how "simultaneously stapling" was defined. The legal framework under 35 U.S.C. § 112 requires that (1) the claim at issue be interpreted to determine its proper scope and meaning; and (2) it be determined whether the accused device is within the scope of the properly interpreted claim. Moreover, 35 U.S.C. § 112 further directs that the claim language be construed to "cover the corresponding structure."

Accordingly, I decided that "simultaneously stapling" means "exactly same," because that is how defendant used it to mean: the inventor is his own lexicographer. Defendant argued for a looser construction of "simultaneously stapling." But its own Weber patent states that "Weber shows two staple applicators simultaneously applying staples to two different accumulations at the *exact same* instant in time." I therefore concluded that defendant was bound by its own usage: "simultaneously stapling" means "exactly same or coincident." Memorandum at 20.

It is undisputed that ⅒ of a second separates the timing of the two competing machines; that is, ⅒ of a second prevents the stapling on the Print '91 machine from being "simultaneous." Defendant noted this difference, but complained it was insubstantial. Nevertheless, whether or not a difference is "insubstantial" matters little under Section 112: literal equivalence means exactly that. I also went further—and this elaboration forms the basis of defendant's request to reconsider—and explained that although only ⅒ of a second separates the timing of the two machines,

> in the binding industry, even ⅒ of a second may be significant.... the ⅒ of a second difference may be a significant advance in the art. Defendant does not explain why or why not ⅒ of a second is unimportant. Because the patentee has the burden of proof in an infringement action, defendant's failure to explain why the difference is negligible leads to the conclusion that the Print '91 device does not" infringe the Weber patent.

Memorandum at 20–21.

Defendant argues that this paragraph is erroneous as a matter of law because on summary judgment motion, the burden of proof is on the moving party, the plaintiffs. The paragraph recited above mentions that "patentee [defendant] has the burden of proof in an infringement action...." Defendant therefore argues that "[i]t is clear that it was Ferag's burden to show that no fact material to this issue is in dispute." As a matter of law, then, "this Court must find that the issue remains in dispute." Defendant's Request at 3.

Defendant is correct in noting that the reference to burden of proof in my Memorandum was not sufficiently precise. In *Celotex Corp. v. Catrett,* the Supreme Court ruled that:

> the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). That the Memorandum states that the "patentee has the burden of proof in an infringement action" is an infelicitous expression of the application of the *Celotex* rule to these facts. The Memorandum should have made clear that it mentioned defendant's burden of proof at trial *only* because it is a factor to consider under *Celotex.* The reference in the Memorandum to defendant's burden of proof at trial did not frame a disputed issue of material fact.

Defendant did not say, in support of its motion, "why or why not" the ¹⁄₁₀ of a second difference was important. This failure to "establish the existence of an element essential" to defendant's case coupled with defendant's burden of proof on this issue at trial mandate the entry of summary judgment on the authority of *Celotex.*

Defendant's request for reconsideration of this court's decision as to literal infringement cannot be honored. Defendant has conceded that "in the event this Court adopts Ferag's position and determines that 'simultaneous stapling' means two stapling operations that occur exactly coincidentally, claim 4 would not be literally infringed." Defendant's Post–Hearing Memorandum in Opposition to Plaintiffs' Summary Judgment Motion at 40. I determined as a matter of law that "simultaneous stapling" did, in fact, mean "exactly coincidentally." I therefore concluded, as defendant had conceded, that claim 4 "would not be literally infringed."

## II.

The doctrine of equivalents is designed to do equity in those situations in which "there is no literal infringement but liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention." *Hormone Research Foundation v. Genentech, Inc.,* 904 F.2d 1558, 1564 (Fed. Cir.1990). Under this doctrine, infringement may be found if the accused product performs substantially the same function in substantially the same way to give substantially the same result as the patented invention. *See Graver Tank Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Accordingly, defendant claims error because it "submitted evidence tending to show that the Print '91 machine operated in substantially the same way as the device disclosed in the Weber patent." Defendant's Request at 4. Defendant contends that this alone is sufficient to defeat summary judgment because whether an element is "substantially the same" is a "fact issue precluding summary judgment." Defendant's Request at 5 (citing *Martin v. Barber,* 755 F.2d 1564, 1568 (Fed.Cir., 1985)).

Be that as it may, defendant must still present evidence which would raise an issue of material fact as to whether the differences between the Print '91 machine and the Weber are insubstantial. The Federal Circuit has repeatedly "upheld the grant of summary judgment in favor of those accused of infringement [only] where there was no genuine issue of material fact, the trial court had properly construed the claims, and a finding of infringement would therefore have been impossible." *Porter v. Farmers Supply Service, Inc.,* 790 F.2d 882, 884 (Fed.Cir.1986). Thus, the question is: Has the defendant presented evidence which would raise an issue of material fact? Defendant states that it has:

> submitted evidence tending to show that the Print '91 machine operated in substantially the same way as the device disclosed in the Weber patent. Defendant's Hearing Exhibit 2. Moreover, Ferag vigorously disputed this. This is sufficient to raise a genuine issue of material fact warranting the denial of summary judgment.

Defendant's Request at 4.

Defendant is mistaken. The transcript of the hearing at which "Defendant's Hearing

Exhibit 2" was introduced shows that defendant did not introduce its Exhibit 2 for the purposes of showing that the Print '91 machine stapled in substantially the same way as the Weber stapling device. To the contrary, Defendant's Hearing Exhibit 2 was introduced by defendant to illustrate how Mr. Mayer, defendant's expert, believed the Meier '755 patent operated. Defendant's Hearing Exhibit 2 is, in fact, a "home-made device to try and illustrate the stationary guide Mr. Mayer was talking about," and is relevant only to the invalidity action brought by the plaintiffs against the defendant. *See* November 2, 1993 Hearing Transcript at 61–62. Defendant's Hearing Exhibit 2 has nothing to do with the Print '91 device.

Defendant did not introduce evidence as to why or how the admitted differences between the Print '91 machine and the Weber device in construction and operation are insubstantial. Defendant simply concluded that they were. The *sole* piece of evidence on which defendant relies as meeting its burden to show that a genuine issue of material fact exists—Defendant's Hearing Exhibit 2—is irrelevant.

### III.

Accordingly, an accompanying Order denies defendant's Request for Reconsideration.